Thomas 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00455-CV







Donald Scott Thomas and Jane Holt Thomas, Appellants



v.



Prudential Securities, Inc. and Prudential-Bache Securities, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 94-01256, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING








 Appellants Donald Scott Thomas (1) and Jane Holt Thomas challenge the authority
of an arbitration panel to award attorney fees and expert witness fees to appellees Prudential
Securities and Prudential-Bache Securities, Inc. ("Prudential"). Because we hold that the
arbitration panel acted within its authority in awarding these fees we will affirm the district court's
judgment.



BACKGROUND


 In February 1990, Donald Thomas met with a representative of Prudential to
discuss investment possibilities in a company called LIN Broadcasting. The Thomases ultimately
used Prudential's brokerage services to engage in margin and options trading in LIN Broadcasting;
they alleged that as a result of these investment transactions they incurred significant losses. They
blamed these losses on Prudential, claiming among other things that Prudential engaged in fraud
and "preyed" on them by placing them in an investment situation unsuitable for their age and
financial acumen. Pursuant to a client agreement with Prudential, the Thomases were required
to submit their claims against Prudential to an arbitration panel.

 The Thomases sought from Prudential approximately five million dollars in
damages, five million dollars in "lost trading opportunity costs," and exemplary damages of
approximately thirty million dollars. The Thomases also asked for reasonable and necessary
attorney fees and expenses. Prudential vigorously disputed the Thomases' allegations, claiming
that the Thomases' acquisition of LIN Broadcasting stock actually resulted in a profit while their
accounts were maintained at Prudential. Prudential pointed to Donald Thomas's extensive and
successful experience in business matters generally and investments specifically to refute the claim
that Prudential took advantage of the Thomases. In addition to denying each of the Thomases'
claims on their merits, Prudential asserted that the entire action lacked any factual basis and was
brought in bad faith to force a settlement. Prudential sought to recover its attorney and expert
witness fees from the Thomases.

 Following extensive discovery and a four-day hearing, the arbitration panel
dismissed the Thomases' claims. The panel awarded Prudential $80,000 in attorney fees and
$16,500 in expert witness fees. The Thomases unsuccessfully sought to vacate the award in
district court. On appeal they attack the district court's judgment in four points of error. The
first two challenge the authority of the arbitration panel to award attorney and expert witness fees;
the third and fourth points address potential arguments that the Thomases waived their complaint
on this issue. Because Prudential does not raise the issue of waiver, we consider only whether
the arbitration panel acted within its authority in awarding the fees.



DISCUSSION


 Because this transaction involves interstate commerce, the Federal Arbitration Act
(the "FAA") governs the issues relating to the arbitration dispute. See 9 U.S.C.A. §§ 1-16
(1970); B.W.I. Cos. v. Kurtenbach, 910 S.W.2d 620, 622 (Tex. App.--Austin 1995, original
proceeding). Under section 10(a)(4) of the FAA, this Court may vacate an arbitration award
where the arbitrators exceeded their authority in rendering it. 9 U.S.C.A. § 10(a)(4) (1970). The
Thomases invoke this provision in attempting to set aside the award, claiming that the arbitration
panel had no jurisdiction to assess attorney or expert witness fees.

 As the party moving to vacate the arbitration award, the Thomases bear the burden
of proving that the panel exceeded its jurisdiction. See Wall Street Assoc. v. Becker Paribas, 27
F.3d 845, 848 (2d Cir. 1994). The scope of the arbitrator's jurisdiction is determined by the
intent of the parties as expressed through the contract containing the arbitration clause and the
submission agreement. See Executone Info. Sys. v. Davis, 26 F.3d 1314, 1323 (5th Cir. 1994);
Southern Pacific Transp. Corp. v. Young, 890 F.2d 777, 780 (5th Cir. 1989). When parties
actually submit an issue to the arbitrator, courts additionally look to the scope of the submissions
as a reflection of the parties' intent. See Executone, 26 F.3d at 1323. In deciding whether the
arbitration panel exceeded its jurisdiction, we resolve all doubts in favor of arbitration. Moses
H. Cone Memorial Hosp. v. Mercury Constr., 460 U.S. 1, 24-25 (1983); Valentine Sugars, Inc.
v. Donau Corp., 981 F.2d 210, 213 (5th Cir.), cert. denied, 509 U.S. ___, 125 L. Ed. 2d 725
(1993).

 Before doing business with the Thomases, Prudential required them to sign a client
agreement which provided that all disputes between the parties would be resolved through
arbitration. In their submission agreement the parties elected to submit their dispute to arbitration
under the New York Stock Exchange ("NYSE") rules, which thus became incorporated into the
contractual agreement between the parties.

 Prudential asserts that the arbitration panel had the authority to award the contested
fees because: (1) the arbitration rules themselves provide for such an award; (2) the submission
agreement authorized the panel to resolve all claims which may be asserted in the arbitration, and
both parties submitted claims for attorney fees; and (3) the Thomases brought this action in bad
faith. (2) The Thomases assert that nothing in the parties' agreement provides the panel authority
to award attorney or expert witness fees. They further claim that the "American Rule," which
requires each side to pay its own legal expenses absent an express statutory or contractual
provision to the contrary, applies to the arbitration proceeding.

 Prudential contends that NYSE Rule 629(c) explicitly authorizes the arbitration
panel to award attorney and expert witness fees. The rule provides in pertinent part:



In addition to forum fees, the arbitrator(s) may determine in the award the amount
of costs incurred pursuant to Rules 617, 619 and 623 and, unless applicable law
directs otherwise, other costs and expenses of the parties. The arbitrator(s) shall
determine by whom such costs shall be borne.


NYSE Rule 629(c). (3) Prudential claims that "other costs and expenses" include attorney and expert
witness fees. As authority for this interpretation Prudential cites Prudential-Bache Sec., Inc. v.
Tanner, et. al., 72 F.3d 234 (1st Cir. 1996). In Tanner, the First Circuit determined that the
"other costs and expenses" provision in NYSE Rule 629(c) authorized arbitrators to award
attorney fees. Id. at 243.

 The Thomases assert that this Court should not follow Tanner for two reasons. 
First, they urge that a case vacating an arbitrator's award of attorney fees provides better-reasoned
authority on this issue. See Matter of Prudential-Bache Sec. and Depew, 814 F. Supp. 1081,
1083 (M.D.Fla. 1993). In Depew the court was asked to interpret American Arbitration
Association Rule 43, which authorized "any remedy or relief that the arbitrator deems just and
equitable and within the scope of the agreement of the parties . . . ." The court determined that,
by authorizing only those awards "within the scope of the agreement between the parties," the rule
limited the scope of the arbitrator's authority to the express terms of the parties' contract. The
court accordingly held that because the rule referred back to the contract, the rule itself could not
provide authority for the award of attorney fees. Id. at 1083. Unlike the rule at issue in Depew,
Rule 629(c) does not refer back to the parties' original agreement; instead, it serves as a separate
contractual provision which authorizes the award of expenses independent of the parties' original
agreement. Because of this pivotal distinction we find Depew's holding and reasoning
inapplicable to this case.

 The Thomases point out that numerous NYSE rules concerning assessment of
expenses list particular categories of expenses; they claim that attorney fees would be specifically
listed as well if the rules allowed an award of such fees. This contention does not persuade us,
however, because the language at issue by definition contemplates the award of expenses not
enumerated elsewhere in the rules. The position advocated by the Thomases, carried to its logical
end, would render the allowance of "other expenses" meaningless because arbitrators could never
award expenses which were not specifically mentioned in the rules.

 The Thomases cite authority for the proposition that "costs" in relation to lawsuits
generally do not include attorney fees, and argue that this characterization should control our
interpretation of "other costs and expenses" in Rule 629(c). We disagree. The first case cited,
American Airlines, Inc. v. SWEST, Inc., 707 S.W.2d 545, 547-48 (Tex. 1986), interprets the
meaning of "costs" as used in a tariff rule; that rule was incorporated into a contract between the
parties. The court observed that the rule concerned costs incurred by reason of tariff rule
violations or default by the shipper, but did not refer to prosecution of lawsuits. The court
accordingly held that "costs" in this rule did not authorize the recovery of attorney fees. Id. at
548. Unlike the provision involved in American Airlines, Rule 629(c) necessarily refers to costs
and expenses resulting from the prosecution of claims in the arbitration proceedings, and attorney
fees make up a large component of such costs and expenses. For this reason we are not persuaded
by the Thomases' reliance on American Airlines.

 The Thomases next cite this Court's holding that "costs" do not include "costs
billed to the client as part of the attorney's fee for services provided." Westech Eng'g v.
Clearwater Constructors, 835 S.W.2d 190, 205-06 (Tex. App.--Austin 1992, no writ). In
Westech, we interpreted a contractual provision allowing for the recovery of "all costs and
attorney fees" arising out of a suit for enforcement of the contract. Citing Black's Law
Dictionary, we observed that "`costs' usually refer to `[f]ees and charges required by law to be
paid to the courts or some of their officers, the amount of which is fixed by statute or the court's
rules; e.g., filing and service fees.'" Id. at 206. Rule 629(c) specifically provides for the
allocation of forum fees, including filing fees; these fees encompass the same type of expenses as
litigation "costs." Because Rule 629(c) authorizes the award of costs and expenses "in addition
to" these forum fees, "costs" in the litigation context cannot share the same meaning of "costs and
expenses" in Rule 629(c). Furthermore, the Thomases cannot rely on Westech for the proposition
that "costs and expenses" in Rule 629(c) do not include attorney fees. "Costs" in Westech could
not be read to include attorney fees because the contract provided for the recovery of both costs
and attorney fees.

 The Thomases also contend that in light of the "American Rule" requiring litigants
to pay their attorney fees absent a statutory or contractual provision to the contrary, we should
not read into the NYSE rule an implied basis to award attorney fees in the absence of a provision
explicitly authorizing such an award. See Alyeska Pipeline Serv. v. Wilderness Soc'y, 421 U.S.
240, 247, 257 (1975) (describing the "American Rule"). But the Thomases have presented no
authority holding that the American Rule applies to arbitration proceedings. See, e.g., Tennessee
Dep't of Human Servs. v. United States Dep't of Educ., 979 F.2d 1162, 1169 (6th Cir. 1992)
(refusing to extend "American Rule" to arbitrations). More importantly, the American Rule does
not apply where a contractual provision authorizes the award of attorney fees; Rule 629(c)
provides an explicit contractual basis for the award of "other costs and expenses."

 Moreover, as Prudential points out, an exception to the American Rule exists when
a litigant brings a suit in bad faith. See Alyeska Pipeline Serv., 421 U.S. at 245; Tanner, 72 F.3d
at 243; Todd Shipyard Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1064 (9th Cir. 1991); Depew,
814 F. Supp. at 1083. The Thomases insist that the award cannot stand on this basis because this
exception requires a finding of bad faith, and the panel in this case made no such finding. This
contention ignores the rule that arbitrators need not specify the basis for their award. Babcock
& Wilcox Co. v. PMAC, Ltd., 863 S.W.2d 225, 235 (Tex. App.--Houston [14th Dist.] 1993, writ
denied); Valentine Sugars, 981 F.2d at 214. Furthermore, because the Thomases have not
provided a transcript of the arbitration proceedings, this Court presumes evidence supporting the
panel's award. See Kline v. O'Quinn, 874 S.W.2d 776, 783 (Tex. App.--Houston [14th Dist.]
1994, writ denied) (citing House Grain Co. v. Obst, 659 S.W.2d 903, 906 (Tex. App.--Corpus
Christi 1983, writ ref'd n.r.e.)). We therefore assume adequate evidence supported a
determination that the Thomases brought their cause of action in bad faith. Based on that
assumption, the arbitration panel did not exceed its authority in awarding attorney and expert
witness fees.

 We next consider the scope of the submissions to the arbitrators as an indicator of
the arbitrators' authority. See Executone, 26 F.3d at 1323. Significantly, both parties sought the
recovery of attorney fees from the panel, "suggesting that awarding fees was contemplated by the
parties to be within the scope of the agreement to arbitrate." Tanner, 72 F.3d at 243. The
explicit terms of the parties' agreement do not control our analysis here, because "the parties may
agree to arbitration of disputes that they were not contractually compelled to submit to
arbitration." Executone, 26 F.3d at 1323. We conclude that both parties' claims for attorney fees
reflect their unified intention to authorize the panel's award of attorney fees.



CONCLUSION


 Following the reasoning and holding of Tanner, we conclude that the parties'
submission of the attorney fees issue, combined with the authority to award costs and expenses
under Rule 629(c) and the presumed evidence of bad faith on the Thomases' part, provide ample
support for the panel's award of attorney and expert witness fees in this case. Tanner, 72 F.3d
at 243. Because we resolve all doubts in favor of arbitration, we hold that the Thomases failed
to carry their burden of showing that the panel acted outside the scope of its authority in awarding
attorney and expert witness fees. See Moses H. Cone Memorial Hosp., 460 U.S. at 24-25; Wall
Street Assoc., 27 F.3d at 848.

 The judgment of the trial court is affirmed.



 

 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: April 24, 1996 

Publish

1.   Although Mr. Thomas died prior to the submission of this case, the certificate of
cash deposit filed at the trial court names Mr. Thomas as a party rather than his estate.
2.   Prudential also argues that numerous statutory bases authorize the fee award in this
case. Our resolution of the case does not involve these issues, and we therefore do not
reach them.
3.   Rules 617, 619 and 623 concern adjournment fees, discovery costs, and the cost of
transcribing the arbitration record.